IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

ROBERT GREIFENSTEIN,

    Plaintiff,

v.                                                        CIVIL NO. 2:13cv81

CAROLYN W. COLVIN,
Acting Commissioner,
Social Security Administration,

    Defendant.

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Robert Gerifenstein's Objection to Magistrate Judge Lawrence Leonard's Report and Recommendation ("R&R"). For the reasons set forth herein, the Court: (1) **ACCEPTS** the R&R; (2) **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("Defendant"); (3) **DENIES** Plaintiff's Motion for Summary Judgment; and (4) **GRANTS** Defendant's Motion for Summary Judgment.

### I.    PROCEDURAL BACKGROUND

Plaintiff filed his application for DIB on December 12, 2011, alleging that he became disabled and unable to work as of January 1, 2010. R. 179-80.[1] Plaintiff's date last insured ("DLI") was December 31, 2010. Therefore, he was required to establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. *See* R. 17. His application was initially denied on April 2, 2013, R. 109-118, and denied again upon

---

[1] "R." refers to the certified administrative record that was filed under seal on April 26, 2013, pursuant to Local Civil Rules 5(B) and 7(C)(1). At the ALJ hearing, Plaintiff amended the onset date of disability to July 28, 2010.

reconsideration on May 10, 2012. R. 119-29. On May 23, 2012, Plaintiff requested a hearing in front of an administrative law judge ("ALJ"), R. 151-52, which was held on November 13, 2012.[2] R. 32-75. The ALJ issued his decision on November 30, 2012 denying Plaintiff's DIB claim. R. 14-31. The Appeals Council for the Office of Disability and Adjudication ("Appeals Council") denied Plaintiff's request for review of the ALJ's decision on January 23, 2013. R. 1-5. After exhausting his administrative remedies, Plaintiff filed his complaint for judicial review of the Acting Commissioner's final decision on February 15, 2013. ECF No. 3. The Acting Commissioner filed an Answer on April 26, 2013, ECF No. 6.

After the matter was referred to the magistrate judge, the parties filed their respective motions for summary judgment. The R&R was entered on November 6, 2013, finding in favor of the Defendant. Plaintiff filed his objection to the R&R on November 19, 2013, and Defendant filed its reply to the objection on December 3, 2013.

## II. FACTUAL BACKGROUND

In his application, Plaintiff alleged a disability onset date of January 1, 2010. R. 179. At the ALJ hearing, Plaintiff, through counsel, amended the onset date to July 28, 2010. R. 36-39. As of that date, he was a 60 year-old male who last worked in 2005 as a hearse driver for a funeral company. R.39. Prior to that, Plaintiff drove a limousine, and worked for twenty-seven years as a maintenance director for the port of New York, and as a maintenance director for St. John's University in New York City. At the ALJ Hearing held on November 13, 2012, Plaintiff was represented by counsel, and the ALJ took testimony from Plaintiff and an independent Vocational Expert ("VE"). Plaintiff provided the following testimony upon examination by the ALJ and his own attorney:

---

[2] Plaintiff appeared with counsel, and the ALJ also took testimony from an impartial vocational expert ("VE"). R. 32-75.

2

Plaintiff last worked in 2005 as a driver for a funeral company and prior to that, he worked as a director of maintenance operations for 27 years in New York. R. 39-40. He has always battled alcoholism, but remained sober for three years from 2007 until 2010. R. 52-53. In 2010, Plaintiff noted trouble with arterial fibrillation (rapid heartbeat), a lack of short-term memory, R. 44-45, and specifically in September of that year, edema/swollen ankles that affected his ability to walk and maintain balance. R. 47-48. Plaintiff also discussed "age-related brain atrophy . . . . a more recent diagnosis," that resulted in a loss of sensation on the right side of his body, including his face, hands, fingers, arm, and leg. R. 44-45.

Plaintiff reported that in May of 2011, after his date last insured of December 31, 2010, he fell and broke his left arm, which still requires another surgery. R. 54-55. After coming out of a ten-day coma, Plaintiff endured a five-month period of what he described as "house arrest . . . with this contraption on my arm," which eventually led to an alcohol relapse on September 6, 2011. R 54-55. As a result, his depression worsened and he self-medicated by abusing alcohol. *Id.* Plaintiff started to see psychiatrist Dr. Parker after this relapse, who changed Plaintiff's medication and began treating some of his mental health issues, which "changed [his] life." R. 57-58.

Specifically, Plaintiff reported diagnoses of "troubling dreams" and depression that stem from his days as a maintenance director on the New York marine terminal, where he alleged continuous interaction with organized crime syndicate associates, who regularly threatened him and his family. R. 49-50. He reported that as of December 9, 2010, he found Benadryl to be a helpful sleeping aid over Trazodone, and subsequently reported finding "the right medication" for sleeping. *Id.* Previously, as of July 20, 2010, Plaintiff told his primary care physician Dr. Gaglione that he was not experiencing anxiety, panic attacks, depression, or suicidal ideation,

3

except as noted, plus the chronic insomnia discussed above, which was treated through various medications. R. 65. Lastly, Plaintiff also testified to kidney issues resulting in urinary problems and six to seven melanomas that had been removed between 2010 and 2012. R. 52.

In step two of his analysis, the ALJ found that during the period at issue, from January 1, 2010 until December 31, 2010, Plaintiff had only two severe impairments: obesity and residual effects of status post lower extremity fracture, which would have more than a minimal effect on his ability to do basic work related functions. R. 19. All other alleged limitations were determined to be non-severe. R. 19-20. Specifically, in evaluating Plaintiff's mental impairments, including his affective disorder and substance use disorder, the ALJ considered the four broad functional areas set out in section 12.00C of the Listing of Impairments, 20 C.F.R., Part 404, Subpart P, App. 1: (1) activities of daily living, (2) social functioning, (3) concentration, persistence or pace, and (4) decompensation. R. 20. Overall, the ALJ found that any limitations imposed by Plaintiff's alleged mental issues were mild, and therefore, not significant enough to be considered a severe impairment that affected his ability to do basic work functions. On or before the date last insured, the evidence showed that Plaintiff could meet his own personal needs, prepare simple meals, and perform routine chores. He had mild difficulties with social functioning, but indicated and reported no change due to his depression, and he could get along with authority figures. While Plaintiff reported handling stress and changes of routine poorly and that he had a short attention span, there was no evidence in the record to support this allegation on or before December 31, 2010. During that time, the ALJ found that any mental disorders were "controlled with medications . . . [that his] affect was within normal limits, he did not feel drowsy while driving, he had no anxiety, no panic attacks, depression or suicidal ideations," with no episodes of decompensation. R. 20. Therefore, the ALJ concluded that any

medically determinable mental impairments were non-severe. *Id.* (citing 20 C.F.R. § 404.1520a(d)(1)).

Subsequently, the ALJ found that Plaintiff's medically determinable impairments (obesity and residual effects from the lower extremity fracture) could reasonably be expected to cause the alleged symptoms, but that statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with his RFC assessment. R. 22-23. Specifically, the ALJ relied on, and summarized, medical reports from treating physicians at First Colonial Medical Associates and NowCare Medical Center between July 2010 and May 2012. R. 23 (citing 367-412, 527-70). The ALJ assigned only little weight to treating physician Dr. Parker's June 25, 2012 retroactive opinion that Plaintiff "had been mentally unable to work since December 31, 2010 and that he suffers with a complexity of physical disabilities . . . because it goes to the ultimate issue reserved for the Commissioner and it is unsupported by the evidence of record on and before the claimant's date last insured." R. 23 ("Progress notes clearly support no anxiety, panic attacks, depression or suicidal ideation."). Similarly, the ALJ assigned little weight to treating physician Dr. Gaglione's January 4, 2012 retroactive opinion that Plaintiff "has multiple problems and limitations that have been present at least since December 31, 2010," because it was partially based on diagnoses after the date last insured as well. R. 24. Lastly, the ALJ gave no weight to Judith Anapol's January 16, 2012 opinion because she was not an acceptable medical source. *Id.*

Instead, the ALJ gave great weight to the medical source opinions made by non-examining state agency medical consultants, in accordance with 20 CFR §§ 404.1527(f); 416.927(f). *Id.* (110-18, 120-29). The state agency consultants determined that Plaintiff was capable of light work with occasional postural movements. *Id.* Overall, after consideration of

the entire record, the ALJ determined that Plaintiff had the RFC to perform less than the full range of light work, and that, specifically, Plaintiff was able to lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently, with a sit/stand option that avoided climbing ladders, ropes and scaffolds, although he would be able to perform other postural movements on an occasional basis.

### III. LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, the Court reviews *de novo* any part of a Magistrate Judge's recommendation to which a party has properly objected. Fed. R. Civ. P. 72(b)(3). The Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hays*, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decisions falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76

F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. *Perales*, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. DISCUSSION

In so far as the findings of the R&R are not objected to they are directly adopted and affirmed as set forth in the R&R.

Plaintiff's objection to the R&R centers around his assertion that the case of *Ladson v. Astrue*, No. 4:11-2565, 2013 WL 655971 (D.S.C. Feb. 22, 2013), should have been addressed by the magistrate judge and should have led to a finding in the Plaintiff's favor. *Ladson* held, among other things, that an "ALJ's failure to consider the report by [a treating physician] because it was after the DLI was error and the case should be remanded to allow the retrospective consideration of these medical records and opinion." 2013 WL 655971, at *8. That court found that such a remand was warranted under the "inference of linkage standard set forth in *Bird v. Commissioner of Social Sec. Admin.*, 699 F.3d 337 (4th Cir.2012), which held that "the retrospective consideration of evidence is appropriate when the record is not so persuasive as to rule out any linkage of the final condition of the claimant with his earlier symptoms." *Bird*, 699 F.3d at 341 (quotation marks and citation omitted).

The R&R correctly addressed this case in relation to *Bird* (and by extension, *Ladson*). The ALJ in Plaintiff's case assigned little weight to the post-DLI opinions of Dr. Gaglione and Dr. Parker. The difference between this case and the cases of *Bird* and *Ladson* is that the record is persuasive enough to rule out an "inference of linkage." In fact, the pre-DLI evidence weighs against a finding of linkage. Dr. Gaglione himself was the Plaintiff's treating physician during

7

that period, and yet he repeatedly documented less than severe symptoms. It was not until well after Plaintiff's DLI that Dr. Gaglione then amended his more severe diagnosis to include pre-DLI dates. It is clear that the conclusory opinions of Dr. Gaglione and Dr. Parker suffer from a serious lack of any substantive support in so far as they asserted that Plaintiff's pre-DLI condition prevented him from working.

To read *Bird* to hold that post-DLI medical opinions can, in and of themselves and without any meaningful corroboration by pre-DLI evidence, create an inference of linkage is untenable. In both *Bird* and *Ladson* there was corroborating evidence, in addition to the post-DLI opinions that the ALJ's disregarded, that could have supported a finding in favor of the respective plaintiffs in those cases. It was that corroborating evidence that provided the inference of linkage. Therefore, since the pre-DLI evidence actually weighs against any inference of linkage there was no error on the part of Magistrate Judge Miller in not remanding this case pursuant to *Bird* and *Ladson*. Any such inference of linkage was ruled out by the record.

For the reasons set forth herein, the Court: (1) **ACCEPTS** the R&R; (2) **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("Defendant"); (3) **DENIES** Plaintiff's Motion for Summary Judgment; and (4) **GRANTS** Defendant's Motion for Summary Judgment.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA
January __, 2014